# In the United States Court of Federal Claims

No. 15-420 C
(June 10, 2015)[1]

```
* * * * * * * * * * * * * *    *
PERNIX GROUP, INC.            *
                              *
            Plaintiff,        *
                              *
FRAMACO INTERNATIONAL,        *
INC.,                         *
                              *
      Intervenor-plaintiff,   *    Bid Protest; Justiciability; Protest
                              *    Is Not Ripe Where the Agency
            v.                *    Has Yet to Take a Final Action
                              *    Adverse to the Protestor.
THE UNITED STATES,            *
                              *
            Defendant,        *
                              *
CADDELL CONSTRUCTION          *
COMPANY,                      *
                              *
      Intervenor-defendant.   *
* * * * * * * * * * * * * *    *
```

*J. Randolph MacPherson*, Washington, DC, for plaintiff. *Rebecca Bailey Jacobsen*, Washington, DC, of counsel.

*Jonathan D. Shaffer*, Tysons Corner, VA, for intervenor-plaintiff. *Mark E. Hanson* and *Mary Pat Buckenmeyer*, Tysons Corner, VA, of counsel.

---

[1]/ This opinion was issued under seal on May 29, 2015. Pursuant to ¶ 5 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

*Sosun Bae*, United States Department of Justice, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Washington, DC, for defendant.

*Dirk Haire*, Washington, DC, for intervenor-defendant.  *Alexa Santora*, *Sonia Tabriz*, *P. Sean Milani-Nia*, Washington, DC, of counsel.

---

## OPINION AND ORDER

---

**Bush**, *Senior Judge*.

This bid protest is before the court on defendant's and intervenor-defendant's motions to dismiss brought under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC).  These motions have been fully briefed.  For the reasons stated below, defendant's and intervenor-defendant's motions to dismiss are granted.

## BACKGROUND[2]

### I.    Introduction

Plaintiff Pernix Group, Inc. (Pernix) filed its bid protest on April 27, 2015.  The protest seeks declaratory and injunctive relief regarding the proper interpretation of 22 U.S.C. § 4852(c)(2)(E) (2012) in four procurements currently underway under the aegis of the United States Department of State (State).  According to the complaint, the Government Accountability Office (GAO) recently issued a decision advising State to interpret § 4852 in a manner that would eliminate Pernix from consideration in these procurements.  The primary question before the court is whether this protest is ripe, given that State has not yet acted, and has not indicated how it will act, in response to GAO's decision.

---

[2]/ The facts upon which the parties rely are undisputed.  The court makes no findings of fact in this opinion other than to determine whether plaintiff's claims are justiciable.

Caddell Construction Company (Caddell) has intervened in this protest as an intervenor-defendant and Framaco International, Inc. (Framaco) has intervened as an intervenor-plaintiff. State's official response to the GAO decision is not due until June 19, 2015. The government has agreed to stay award in the procurement which was the focus of the GAO protest through June 12, 2015. The court determined that oral argument on the ripeness issue was unnecessary.

## II. GAO and this Court Have Disagreed on the Law Governing Embassy Construction Projects

### A. The Governing Statute

State procurements for embassy construction are subject to 22 U.S.C. § 4852 (2012), titled "Diplomatic construction program." Where adequate competition exists, contractors must be either "United States persons" or "qualified United States joint venture persons" in order to be eligible for such construction contracts. *Id.* § 4852(a). Only the statutory definition of "United States person" is relevant to this bid protest.

More specifically, only one element or requirement of the definition of "United States person" is at issue here:

> (2) the term "United States person" means a person which –
> . . . .
>> (E) with respect to a construction project under subsection (a)(1) of this section, has achieved total business volume equal to or greater than the value of the project being bid in 3 years of the 5-year period before the date [of the issuance of the solicitation.]

22 U.S.C. § 4852(c)(2). Thus, under the plain meaning of the statutory terms, a minimum business volume threshold is established which screens out ineligible contractors. Since 2007, however, GAO and this court have diverged as to the proper formula to employ in determining the "total business volume" minimum threshold.

**B.     GAO's Interpretation of the Total Business Volume Requirement**

In March of 2007 Caddell filed a protest at GAO concerning the award of an embassy construction contract.  *Caddell Constr. Co.*, B-298949.2, 2007 CPD ¶ 119, 2007 WL 1893209, at *3 (Comp. Gen. June 15, 2007) ("*Caddell I*").  In that protest, Caddell challenged State's "approach of adding together 3 years of a company's business receipts" to determine the total business volume of an offeror. *Id.* at *8.  In essence, State's interpretation of the phrase "total business volume equal to or greater than the value of the project being bid in 3 years of the 5-year period before the date [of the issuance of the solicitation]," 22 U.S.C. § 4852(c)(2)(E), allowed a company to meet the minimum threshold by aggregating three years of business receipts.  *Caddell I*, 2007 WL 1893209, at *8. This approach can be described as a "cumulative" total business volume formula.

GAO agreed with Caddell that State's cumulative total business volume formula was not correct and opined:

> We think the ordinary and common meaning of these words is that eligible offerors will have achieved a business volume equal to or greater than the value of the project in *each* of 3 years within the 5-year period.

*Id.* at *9 (emphasis added).  Thus, GAO adopted an interpretation of total business volume that requires that the minimum threshold be met annually for three individual years, not cumulatively through aggregation.  GAO's formula can therefore be described as an "annual" total business volume formula.  After giving consideration to other means of statutory interpretation beyond an analysis of the plain text, GAO concluded:

> [W]e think the agency's interpretation of this provision – looking to an entity's highest cumulative 3-year business volume within the previous 5-year period – conflicts with the [legislative history].  In short, we find that [State's] interpretation of this statute is inconsistent with its ordinarily understood meaning, and with the legislative concerns that led to the statute's enactment.

*Id.* at *10.

### C.    The United States Court of Federal Claims Disagrees with GAO and Adopts the Cumulative Total Business Volume Formula

Another bid protest filed later that year with this court raised the same issue, *i.e.*, whether the total business volume threshold must be met annually, or cumulatively, in three of the five years before the issuance of the solicitation. *Grunley Walsh Int'l, LLC v. United States*, 78 Fed. Cl. 35 (2007).  There, the protestor had been adversely affected by State's decision to follow *Caddell I* and to adopt an annual total business volume threshold interpretation of § 4852(c)(2)(E).  *Grunley Walsh*, 78 Fed. Cl. at 38.  The court observed that for pure questions of law this court accords no deference to GAO opinions, and noted that GAO decisions are not binding on this court.  *Id.* at 39 (citations omitted).

Like GAO, this court began its analysis with the plain text of the statute. Unlike GAO, the court reached this conclusion:

> The word "total" before the term "business volume" indicates that the requirement is met by adding three out of the past five years to equal the offeror's "total business volume."  If the section is read without the word "total," it is completely unclear whether the three years are to [be] measured individually or cumulatively. The inclusion of the word "total" modifies the term "volume" and informs the reader that the volume in question will be, as plaintiff states, "a product of addition."  Measuring the three years cumulatively gives meaning to the word "total" and avoids a construction that leaves language "superfluous, void, or insignificant."

*Id.* at 40 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (footnote omitted).  After reviewing other potential aids to statutory construction, the court held that the "total business volume requirement is cumulative" and sustained the protest.  *Id.* at 43.

**D.      GAO Comments in 2009 that the Annual Total Business Volume Formula in *Caddell I*, Not the Cumulative Total Business Volume Formula in *Grunley Walsh*, is Correct**

In 2009, GAO was confronted again with the total business volume question in another State Department embassy construction project protest. *Caddell Constr. Co.*, B-401596, 2009 CPD ¶ 187, 2009 WL 3031273 (Comp. Gen. Sept. 21, 2009) ("*Caddell II*").  In that protest, which also involved two of the three offerors participating in this protest, Caddell, relying on *Caddell I*, suggested that Framaco should have been eliminated from the competition because, among other reasons, it did not meet the annual total business volume requirement (as opposed to the cumulative total business volume requirement).  *Id.* at *3.  GAO did not base its decision in *Caddell II* on Framaco's failure to meet the annual total business volume requirement, but relied instead on other defects in Framaco's qualifications.  *Id.* at *4.

State argued before GAO that it was following *Grunley Walsh* and applying the cumulative total business volume requirement, not the annual total business volume requirement applied by GAO in *Caddell I*.  *Caddell II*, 2009 WL 3031273, at *4.  GAO observed that State "recognizes that our Office reached a different conclusion about the meaning of this statute, [but] it urges our Office to follow the court's interpretation" of § 4852(c)(2)(E) in *Grunley Walsh*.  *Id.*  GAO disagreed with this suggestion:

> Then and now, we think the ordinary and common meaning of the words in this statute is that eligible offerors will have achieved a business volume equal to or greater than the value of the project in *each* of 3 years within the 5-year period.

*Id.* (citing *Caddell I*) (emphasis added).  Nonetheless, avoiding direct conflict with this court's interpretation of § 4852(c)(2)(E), GAO did not address State's application of a cumulative total business volume requirement; instead, GAO sustained Caddell's protest on other grounds.  *Id.*

**III.    Protests of the Current Embassy Construction Procurement in Each Forum**

6

**A.    In 2014, Pernix and Framaco Satisfy the Cumulative Total Business Volume Formula and Are Prequalified for an Embassy Construction Contract Procurement**

Pernix and Framaco were recently judged by State to have satisfied the cumulative total business volume requirement in a competition for embassy construction in Maputo, Mozambique (the Maputo procurement). Compl. ¶¶ 14-15; Framaco Resp. at 4.  As a result, they, along with Caddell and other offerors, were invited to participate in Phase II of the Maputo procurement.  Compl. ¶ 17; Framaco Resp. at 5.  In other words, these offerors had achieved "prequalification" for the Maputo procurement.  The Prequalification Notice listing the companies selected to continue in the procurement was published on April 4, 2014.  Compl. ¶ 17.

**B.    Caddell Protests the Prequalification of Pernix and Framaco at GAO**

Before Phase II proposals were submitted by the offerors in the Maputo procurement, Caddell filed a protest at GAO arguing that Pernix and Framaco should not have been prequalified, relying on the annual total business volume requirement articulated in *Caddell I* for one of its protest grounds.  *Caddell Constr. Co.*, B-411005.1, B-411005.2, 2015 CPD ¶ 132, 2015 WL 1874239 (Comp. Gen. Apr. 20, 2015) (*Caddell III*).  In its decision on that protest GAO noted the conflict between the Court of Federal Claims and GAO in interpreting the "total business volume" term of § 4852(c)(2)(E).  *Caddell III*, 2015 WL 1874239, at *10.  As in 2009, GAO found "no basis to revise our prior interpretation of the [law]."  *Id.*

The reasons why GAO continues to interpret § 4852(c)(2)(E) differently than this court in *Grunley Walsh* are irrelevant to the current motions under review.[3]  By following *Caddell I*, GAO sustained Caddell's challenge to

---

[3] This court, were it to reach the merits of Pernix's protest, would be bound by neither *Grunley Walsh* nor *Caddell III*.  Decisions in other cases before this court are not binding in this proceeding.  *See W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted).  Nor do GAO decisions create binding precedent for this

(continued...)

7

Framaco's prequalification, in part, because Framaco never achieved an annual total business volume of $160 million (the value of the Maputo construction project) although Framaco satisfied the cumulative total business volume formula. *Caddell III*, 2015 WL 1874239, at *13. GAO also sustained Caddell's challenge to Pernix's prequalification, for the sole reason that Pernix's annual total business volume never reached $160 million, although Pernix, like Framaco, satisfied the cumulative total business volume formula. *Id.* at *14-16. The GAO decision issued on April 20, 2015.

### C. Pernix Files a Protest in this Court Concerning the Maputo Procurement and Three Others

One week after GAO issued *Caddell III*, Pernix filed its bid protest in this court. Although State has taken no action in response to *Caddell III*, and has not publicly reacted to *Caddell III*, Pernix seeks an injunction and declaratory relief to forestall any action by State that would harm its competitive interests. Should State choose to follow the recommendation of GAO in *Caddell III*, Pernix would be excluded from the Maputo procurement – thus, Pernix seeks an injunction to preclude this occurrence. Compl. Count II, IV. Should State choose to follow the recommendation of GAO in *Caddell III*, Pernix would also lose any chance of winning contracts for State Department construction projects in three other locations: Matamoros, Mexico; Port Moresby, Papau New Guinea; and, Niamey, Niger. *Id.* Count III-IV. Pernix seeks an injunction preventing those occurrences as well. *Id.* Lastly, Pernix seeks declaratory relief regarding the proper interpretation of § 4852(c)(2)(E). *Id.* Count I.

### D. Motions to Dismiss

Defendant and Caddell both argue that Pernix's claims are not ripe, because State has not yet taken any action to revoke Pernix's prequalification for the Maputo procurement. The government presents two additional arguments. According to one theory, Pernix lacks standing to bring this protest because it has

---

[3](...continued)
court. *See, e.g.*, *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1331 n.1 (Fed. Cir. 2011) (stating that GAO decisions do not create binding precedent for the United States Court of Appeals for the Federal Circuit); *XTRA Lease, Inc. v. United States*, 50 Fed. Cl. 612, 618 (2001) (stating that "GAO decisions are not binding on this court") (citation omitted).

not been prejudiced by any error committed by State.  Def.'s Mot. at 7-8.
According to another theory, even if Pernix's protest of the Maputo procurement
is deemed to be justiciable, Pernix should not be allowed to include the three other
procurements in its protest.  For this reason, the government argues that any of
plaintiff's claims related to procurements for construction in Matamoros, Port
Moresby, and Niamey should be dismissed.  *Id.* at 8.  The court reserves further
discussion of these legal theories for the analysis section of this opinion.

## DISCUSSION

### I.   Standard of Review for a Ripeness Challenge to a Bid Protest

Ripeness is a justiciability doctrine.  *See Fisher v. United States*, 402 F.3d
1167, 1176 (Fed. Cir. 2005) ("Though justiciability has no precise definition or
scope, doctrines of standing, mootness, ripeness and political question are within
its ambit.") (citations omitted).  A 2009 decision of this court provided a succinct
description of the ripeness doctrine and applied that doctrine to a bid protest in
this court:

> The justiciability doctrine of ripeness
> circumscribes the court's review to cases that present
> realized rather than anticipated or hypothetical injuries.
> *United Public Workers of America v. Mitchell*, 330 U.S.
> 75, 89-90, 67 S. Ct. 556, 91 L. Ed. 754 (1947).  A claim
> for relief is not ripe for adjudication when it rests upon
> "contingent future events that may not occur as
> anticipated, or indeed may not occur at all."  *Thomas v.
> Union Carbide*, 473 U.S. 568, 581, 105 S. Ct. 3325, 87
> L. Ed. 2d 409 (1985).  When reviewing an administrative
> action, the court evaluates two factors:  (1) "the fitness of
> the issues for judicial decision," and (2) "the hardship to
> the parties of withholding court consideration."  *Abbott
> Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18
> L. Ed. 2d 681 (1967), *overruled on other grounds* by
> *Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L.
> Ed. 2d 192 (1977).  A challenge to an administrative
> action must satisfy both factors, under *Abbott*

*Laboratories*, in order to be ripe for judicial review. *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1581 (Fed. Cir. 1993).  Under the first factor, "an agency decision is not ripe for judicial review until the allegedly offending agency has adopted a *final* decision." *NSK, Ltd. v. United States*, 510 F.3d 1375, 1384 (Fed. Cir. 2007) (emphasis added).  In turn, an agency's decision is final, for the purposes of ripeness, only if it (1) "marks 'the consummation of the agency's decision-making process,' i.e., it must not be merely tentative or interlocutory, and (2) 'the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* at 1385 (quoting *Bennett v. Spear*, 520 U.S. 154, 177, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)).

*Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 678 (2009).

The basic analytical framework presented in *Madison Services* is the same as the ripeness framework recently discussed by the United States Court of Appeals for the Federal Circuit.[4]  The Federal Circuit decision most on point, because of its articulation of a ripeness standard applicable to bid protests in this court, is *Systems Application & Technologies, Inc. v. United States*, 691 F.3d 1374 (Fed. Cir. 2012) (*SA-TECH*).  This precedential statement of the ripeness doctrine is very similar to the discussion of the doctrine presented in *Madison Services*:

---

[4]/  Because *Madison Services* cleaves to binding precedent of the Federal Circuit, the court finds the ripeness analysis in *Madison Services* to be far more persuasive than the ripeness analysis in *CBY Design Builders v. United States*, 105 Fed. Cl. 303 (2012), a case relied upon by both Pernix and Framaco.  The *CBY Design* opinion doubted whether some of the cases relied upon in *Madison Services*, such as *Bennett v. Spear*, 520 U.S. 154 (1997), *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352 (Fed. Cir. 2008), and *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344 (Fed. Cir. 2005), had "much, if any relevance to the question of whether a bid protest is ripe." 105 Fed. Cl. at 332.  Yet these opinions, cited approvingly in *Madison Services* and questioned as potentially irrelevant in *CBY Design*, provide the foundational law for the Federal Circuit's subsequent application of the ripeness doctrine to a bid protest.  *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012).

A claim is not ripe for judicial review when it is contingent upon future events that may or may not occur. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985). The purpose of the doctrine is to prevent the courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). In assessing ripeness, there are two basic factors: "(1) the fitness of the issues for judicial decision[;] and (2) the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149, 87 S. Ct. 1507.

When a party challenges government action, the first factor becomes a question of whether the challenged conduct constitutes a final agency action. *See Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1363 (Fed. Cir. 2008); *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1349-50 (Fed. Cir. 2005) [(*Textile Importers*)]. Final agency action hinges on two points: "First, the action must mark the 'consummation' of the agency's decision-making process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (citations omitted).

*SA-TECH*, 691 F.3d at 1383-84. It is the "final agency action" or "fitness" prong

of the ripeness analysis which courts typically examine first.[5]

Next, to satisfy the hardship prong of the ripeness analysis, the government action's impact upon a plaintiff must be "sufficiently direct and immediate." *Abbott Laboratories*, 387 U.S. at 152.  Abstract, avoidable or speculative harm is not enough to satisfy the hardship prong.  *E.g.*, *Texas v. United States*, 523 U.S. 296, 301-02 (1998).  Being forced to wait for an agency to issue a decision is generally not enough to satisfy the hardship prong; the Federal Circuit has stated that "any business uncertainty associated with awaiting a final decision from an agency is different in kind and legal effect from the hardship identified in *Abbott Laboratories* and insufficient to turn a threshold agency decision into a final agency action ripe for review." *Textile Importers*, 413 F.3d at 1350.  In the bid protest context, there is no measurable hardship, at the time of the protest, flowing from a future, hypothetical agency decision adverse to the protestor.  *See Texas Bio- & Agro-Defense Consortium v. United States*, 87 Fed. Cl. 798, 806 (2009) (dismissing a protest on ripeness grounds and finding no hardship to the protestor because "these [lost business opportunities] are not hardships that would stem from a dismissal without prejudice [of this protest] on ripeness grounds – they are hardships which would be suffered *if* Plaintiff's proposed site is not ultimately selected") (emphasis added).

Justiciability challenges focusing on ripeness are often brought under RCFC 12(b)(1), as is the case here.  Justiciability, however, is not the same as subject matter jurisdiction; ripeness and justiciability might best be described as limits on the *exercise* of jurisdiction.  *See Madison Services*, 90 Fed. Cl. at 680 n.3 (disagreeing with the government's "characterization of either ripeness or mootness as a *per se* limit on the court's jurisdiction[,]" noting "lingering uncertainty as to whether, and when, ripeness or mootness may operate as a limit upon the jurisdiction of a federal court") (citations omitted).  In its most recent pronouncement on this issue, the Federal Circuit distinguished between

---

[5]/  If it is determined that there is no final agency action to protest, the hardship prong appears to be of lesser importance and is sometimes omitted entirely from the court's discussion of ripeness.  *See, e.g.*, *Madison Services*, 90 Fed. Cl. at 679-80 (dismissing a protest on ripeness grounds without considering hardship to the protestor, because there was no final agency action to protest); *see also NSK Ltd. v. United States*, 510 F.3d 1375, 1385 (Fed. Cir. 2007) (affirming the dismissal of a claim as unripe solely because the agency action was not final, without discussing hardship to the claimant).

justiciability (in the sense of ripeness in particular) and subject matter jurisdiction. *See, e.g.*, *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1348-52 (Fed. Cir. 2015) (treating these two threshold inquiries as to whether a complaint should be dismissed as distinct). *But see Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004) (stating that the Court of Federal Claims "does not have jurisdiction over [takings] claims that are not ripe" (citing *Howard W. Heck & Assocs., Inc. v. United States*, 134 F.3d 1468 (Fed. Cir. 1998)). Nonetheless, it is clear that an unripe claim, like a claim outside this court's jurisdictional ambit, must be dismissed without prejudice. *Shinnecock Indian Nation*, 782 F.3d at 1350 (citations omitted).

## II.  Analysis

### A.  Ripeness

#### 1.  No Final Agency Action

There is no final action of State that is the subject of plaintiff's requests for relief in the complaint. Instead, up to this point, State has simply applied the cumulative total business volume formula, as did this court in *Grunley Walsh*, and has prequalified both Pernix and Framaco for the Maputo procurement.[6] Compl. ¶¶ 14-15, 17; Framaco Resp. at 4. That action, which favors plaintiff, is not being attacked in this lawsuit. Until and if State *changes* its position on the eligibility of Pernix for the Maputo procurement pursuant to the advice provided by GAO in *Caddell III* there is no final agency action that is ripe for review in this court.[7] *See Madison Services*, 90 Fed. Cl. at 679 ("[P]laintiff's original protest has never been ripe for the court's review, because no final agency decision [regarding] the solicitation has ever been before the court.").

Framaco concedes that Pernix's request for injunctive relief stated in the complaint is not ripe, but attempts to distinguish that request from Pernix's request

---

[6]/ Indeed, except for a brief period between GAO's issuance of *Caddell I* and this court's issuance of *Grunley Walsh*, State appears, on this record, to have consistently preferred the cumulative total business volume interpretation of § 4852(c)(2)(E).

[7]/ As Caddell correctly emphasizes, this court has no jurisdiction to review GAO decisions such as *Caddell III*. Caddell Reply at 2 (citations omitted).

for declaratory relief regarding the proper interpretation of § 4852(c)(2)(E).  The proposition advanced by Framaco is innovative but entirely unsupported by persuasive authority[8]:

> The Pernix request for injunctive relief is premature because the United States Department of State ("State") has not decided whether to follow the Government Accountability Office ("GAO") recommendation and Pernix and Framaco currently remain prequalified for the Maputo, Mozambique procurement . . . .  On the other hand, in light of the sharp disagreement between GAO and this Court on a critical legal issue regarding prequalification that impacts numerous State procurements in a manner that materially prejudices and harms Pernix, Framaco and similarly situated offerors, Pernix's request for declaratory judgment is ripe for consideration by the Court.

Framaco Resp. at 1-2.  The court finds no distinction, however, between requests for declaratory or injunctive relief in determining the ripeness of this bid protest.

The test for ripeness stated in *Abbott Laboratories* and *SA-TECH* applies to requests for declaratory judgments as well as to requests for injunctive relief.  *See Abbott Laboratories*, 387 U.S. at 138 (reviewing the ripeness of an action requesting both declaratory and injunctive relief).  The court notes that the underlying bid protest in *SA-TECH* requested both declaratory and injunctive relief, but this court chose to offer only injunctive relief because the two types of relief would provide the same functional relief to the protestor.  *See Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 720 (2011) ("Because the practical effect of this requested [declaratory] relief is to prevent the Army from taking the proposed corrective action, it is 'tantamount to a request for injunctive relief.'  Thus, the court will limit its discussion to SA-TECH's request for the entry of a permanent injunction prohibiting the Army from undertaking its

---

[8]/ Framaco relies on *CBY Design* for its ripeness analysis.  Framaco Resp. at 7.  As stated previously, the ripeness analysis presented in *CBY Design* diverges from Federal Circuit precedent and is unhelpful here.  *See supra* note 4.

proposed corrective action." (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed. Cir. 2004))).  Because the two forms of relief are functionally indistinguishable in this type of bid protest, *e.g.*, *PGBA*, 389 F.3d at 1228, Pernix cannot present an unripe claim for injunctive relief but simultaneously present a ripe claim for declaratory relief.  Pernix's request for declaratory relief, like its request for injunctive relief, has no final agency action at its base and must be dismissed as unripe.

Only one other issue raised by the parties merits discussion in the court's review of the "fitness" prong of the ripeness analysis.  Plaintiff relies on two Federal Circuit opinions which discuss the breadth of this court's bid protest jurisdiction in an effort to show that its protest is ripe.  *See* Pl.'s Resp. at 5 (citing *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008); *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999)).  Neither of those opinions addressed the ripeness doctrine, and further, as defendant points out, the bid protest scenarios in *RAMCOR* and *Distributed* are readily distinguishable from the procurements at issue here.  *See* Def.'s Reply at 1-2 ("But plaintiff fails to note the key distinction between those cases and the present action, which is that, in both of the cited cases, the Federal Circuit contemplated jurisdiction over *actual* decisions and alleged violations by the Government, not hypothetical ones.") (citations omitted).  There is no aid for Pernix's ripeness contentions in either of these Federal Circuit opinions.

For all of the above-stated reasons, the court finds that Pernix's protest is not fit for adjudication because there is no final agency action for this court to review.  This finding is strong evidence that this protest is not ripe and is not justiciable.  *See supra* note 5.  The court turns to the second ripeness factor, the hardship prong, to confirm that dismissal of this protest without prejudice is warranted.

## 2.    No Hardship at This Juncture

According to plaintiff, participation in Phase I and Phase II of an embassy construction contract procurement "requires prospective and actual offerors to incur substantial costs."  Pl.'s Resp. at 3.  There appears to be no dispute that Pernix has invested heavily in the competitions at issue in this suit, and that uncertainty regarding the eligibility of Pernix for the Maputo procurement, and

uncertainty regarding its eligibility for the other State procurements noted in the complaint, has an impact on the company. *See id.* Ex. 1 ¶ 6 ("The lack of clarity regarding the legal standard for how to qualify contractors under the 'total business volume' requirement is significantly impacting our company's resources, and will continue to do so until a final interpretation of the [statute] is achieved."). The parties dispute, however, whether the costs of such uncertainty satisfy the hardship prong of the ripeness analysis. *Compare* Framaco Resp. at 8 (stating that the "substantial harm" to Pernix shows that "the second factor, hardship, overwhelmingly weighs in favor of ripeness") *and* Pl.'s Resp. at 9 ("With respect to the 'hardship prong' of the ripeness inquiry, the facts . . . show that it would be the Court's failure to act that would create hardship."), *with* Def.'s Reply at 3-4 ("[A]lthough Pernix and Framaco assert hardship and injury to bolster their arguments of both ripeness and standing, all such hardship or injury is speculative and contingent upon State's acceptance of the GAO's recommendation, an action that has not occurred yet and may not occur at all. . . . [B]ecause State could decide to reject the GAO's recommendation and keep Pernix and Framaco as qualified participants, Pernix and Framaco cannot reasonably claim that they have already been injured . . . .") *and* Caddell Mot. at 4 ("In essence, Pernix has not been harmed and shows no probability that it will be imminently harmed.").

   As noted earlier in this opinion, the ripeness doctrine protects "agencies from judicial interference until an administrative decision has been formalized and its effects [are] felt in a concrete way by the challenging parties." *Abbott Laboratories*, 387 U.S. at 148-49.  In the dispute discussed in *Abbott Laboratories*, the issue was ripe because the Commissioner of Food and Drugs had construed a statute in a manner adverse to the plaintiffs, whereas here, State has not yet acted to construe § 4852(c)(2)(E) in a manner adverse to Pernix. Pernix has not yet "felt [the effects of a final agency action] in a concrete way." *Abbott Laboratories*, 387 U.S. at 148.  Nor has Pernix suffered "sufficiently direct and immediate" effects of any final agency action.  *Id.* at 152.  Under *Abbott Laboratories*, Pernix has not satisfied the hardship prong of the ripeness analysis.

   The general rule is that the hardship prong of the ripeness test cannot be satisfied by contingent or speculative harm. *Texas v. United States*, 523 U.S. at 301-02; *Texas Bio- & Agro-Defense*, 87 Fed. Cl. at 806.  As defendant notes, this rule prevents courts from issuing advisory opinions on abstract legal questions. *See* Def.'s Mot. at 6 (citing cases); Def.'s Reply at 2-3 (same).  Here, any hardship

to Pernix flowing from *Caddell III* is still speculative and contingent, and the hardship prong of the ripeness inquiry under *Texas v. United States* is not satisfied.

A similar result is obtained when this case is compared to Federal Circuit precedent.  In *SA-TECH*, the decision most on point, the hardship prong of the ripeness inquiry was satisfied because the United States Army had made a final decision affecting SA-TECH's competitive advantages in an ongoing procurement:

> With respect to the hardship element of the ripeness analysis, the Army asserts that SA-TECH has not suffered a hardship because the "announced intention to implement corrective action is an intermediate step of a single procurement process, and the continuation of that process, while SA-TECH remains in contention, is not a hardship."  Appellant's Br. 26.  As discussed above, this approach ignores the competitive hardships SA-TECH suffers as a result of the Army's arbitrary decision to recompete the contract.

691 F.3d at 1385.  Thus, in *SA-TECH*, the Army had committed to a decision adverse to the protestor, whereas here, State has made no such commitment.  Under *SA-TECH*, Pernix has not satisfied the hardship prong of the ripeness analysis.

Finally, the court finds *Textile Importers* to be instructive.  At issue there was the government's decision to consider twelve petitions from domestic textile producers requesting that the United States consult with China about certain textile imports, a course of action which *might* have led to import restrictions against those Chinese imports.  A suit filed by an association of textile importers to enjoin the consideration of those twelve petitions was found to be unripe.  The Federal Circuit provided this analysis focusing on the hardship prong of the ripeness inquiry:

> In this case, the Association cites a number of actions taken by its members allegedly in response just to [the

17

> government's] decision to consider the twelve petitions.
> These actions were based on the businesses' perceived
> uncertainty concerning whether, when, and to what
> extent import relief might be imposed in the future, but
> not on any legally binding requirement presently
> imposed by . . . the government.  In contrast, *Abbott*
> *Laboratories* involved a mandatory regulation with
> binding legal effect that was issued after formal notice
> and comment and that was utterly unambiguous.  Thus,
> following [*Federal Trade Commission v. Standard Oil*
> *Co. of California*, 449 U.S. 232 (1980)], we hold that
> any business uncertainty associated with awaiting a final
> decision from an agency is different in kind and legal
> effect from the hardship identified in *Abbott*
> *Laboratories* and insufficient to turn a threshold agency
> decision into a final agency action ripe for review.

*Textile Importers*, 413 F.3d at 1350.  Here, there is no "legally binding
requirement" issued by State that harms Pernix – under *Textile Importers*, Pernix
has not satisfied the hardship prong of the ripeness inquiry.  *Id.*  As in *Textile*
*Importers*, "any business uncertainty associated with awaiting a final decision
from an agency is different in kind and legal effect from the hardship identified in
*Abbott Laboratories* and insufficient" to establish ripeness.  *Id.*  At this juncture,
there is no hardship to Pernix so as to render this bid protest ripe and justiciable.

### B.    Standing

Both the government and Caddell assert that plaintiff lacks standing to bring
this protest. Def.'s Mot. at 7-8 & n.1; Def.'s Reply at 3-4; Caddell Reply at 6-8.
Having considered the precedential Federal Circuit decisions relied upon by the
parties, the court is not convinced that the facts in the bid protests underlying
those decisions are sufficiently analogous to this case.  The court therefore
declines to extend various Federal Circuit pronouncements on bid protest standing
to the somewhat unusual circumstances of this case.

Here, Pernix's protest challenges a hypothetical elimination from
competition that has not yet occurred.  That challenge is clearly barred on ripeness

grounds.  The court therefore sees no reason to reach or address the parties' rather convoluted arguments regarding Pernix's standing to bring its unripe protest.  *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (citations and internal quotations omitted); *Shinnecock Indian Nation*, 782 F.3d at 1353 (affirming this court's dismissal of a suit on ripeness grounds but vacating this court's alternative holding that the suit should also be dismissed for lack of subject matter jurisdiction).

### C.   Multiple Procurement Protest

Because Pernix's bid protest is not ripe, the threshold issue of justiciability requires dismissal of this suit.  The court therefore need not address defendant's and Caddell's alternative argument that four procurements cannot be addressed in a single protest.  The court notes, however, that there have been instances in which this court has considered challenges to multiple procurements within a single protest.  *E.g.*, *Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 722 & n.6 (2004); *MCS Mgmt., Inc. v. United States*, 48 Fed. Cl. 506, 509 (2001).

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1)    Defendant's Motion to Dismiss, filed May 5, 2015, is **GRANTED**;

(2)    Intervenor-Defendant Caddell's Motion to Dismiss, filed May 5, 2015, is **GRANTED**;

(3)    Plaintiff Pernix's Motion for Declaratory Judgment, and Preliminary and Permanent Injunction, filed April 27, 2015, is **DENIED as moot**;

(4)    The Clerk's Office is directed to **ENTER** final judgment in favor of defendant and intervenor-defendant, **DISMISSING** the complaint **without prejudice**;

(5)    On or before **June 10, 2015**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion,

with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter; and

(6)    Each party shall bear its own costs.


/s/Lynn J. Bush
LYNN J. BUSH
Senior Judge